### EZEKIEL DAWSON v. MARY SMITH *et al.*

Whenever a second or subsequent will is shown to have been executed,
    and is traced to the possession of the deceased, and it cannot be found

after his death, it is to be presumed that he afterward destroyed it with the intention of thus revoking it, and this presumption is conclusive unless rebutted by countervailing evidence; and, therefore, it will not revoke a former will made by the testator.

ISSUE of *devisavit vel non* from the Register of Wills in Kent County to determine whether the paper writing accompanying it was the last will and testament of Elizabeth Smith deceased, who died in March, 1864. Immediately after her death no will was found and letters of administration were granted upon her estate to Joseph P. Comegys Esquire, but afterward the paper writing in question, purporting to be a will of hers and executed in due form on the 30th day of December, 1852, had been discovered and propounded to the Register for probate.

*Ridgely, for the plaintiff*, proved the due and formal execution of the paper by the deceased at that time, as her last will and testament.

*Pennington for the defendants.* The validity of the paper writing propounded and now in question, as the last will and testament of the deceased, is contested on the ground that she formally executed a later will in the year 1857, which fact can be clearly and conclusively proved, and although it could not now be found, he should contend that it operated as a revocation of the former will, and that this presumption, strong in itself, without any additional proof, was still further strengthened and sustained by the fact that the one now before the court, had come very near sharing the fate of it and of being forever lost also.

*George R. Dickson sworn.* Was acquainted with the deceased, Elizabeth Smith, and was called upon in November, or December, 1857, to go to the house of Samuel Culbreth in this place to witness the execution of the will, or some other paper, of Elizabeth Smith. Samuel Culbreth was present and Mr. N. B. Smithers also, he believes.

He saw her execute a will on that occasion, and signed it as a witness. After it was executed it was delivered to her by Samuel Culbreth and she put it in her reticule.

*N. B. Smithers sworn.* He wrote for Elizabeth Smith, the deceased, the will propounded and now before the court, and in the latter part of November or the early part of December, 1857, by her request he wrote another will for her, which was executed by her. His impression was that he was a subscribing witness to the second will. He took the will to the house of Mr. Culbreth, and Mr. G. B. Dickson was sent for to subscribe it as a witness, but does not know what became of it after its execution. He drew both wills, and both from her instructions and according to her request.

*Eli Saulsbury, for the defendants,* put in evidence, after proving them by Mr. Smithers, the notes taken by him preparatory to drawing the second will, as further proof merely that another will was made at the time mentioned. Mr. Comegys as the administrator of the deceased, and Wm. F. Culbreth, administrator of Samuel Culbreth deceased, were then examined as witnesses with others, to prove that diligent search had been made among the papers of both decedents, for the second will and that it could not been found.

*The Court, Gilpin C. J., charged the jury.* The question which they were to decide was whether the paper writing or instrument then before them, and purporting to be a will of Elizabeth Smith, deceased, made on the 30th of December 1852, was, or was not, her last will and testament. It had been proved, however, that another and later will had been duly made and executed by her in 1857, and on the day of its execution it was last seen in her own possession, so far as the testimony related to that point. She died on the 7th of March 1864, and since then diligent search had been made among her papers to find it, if possible, but it

had not been found. The first will, the will of 1852 now before them, had also remained undiscovered and unpro- duced for a time after her death,but it had since been found in the same condition in which it was made and formally executed at the time as her last will and testament, so far as the internal and intrinsic evidence of the instrument itself disclosed any thing in regard to it, without cancella- tion or alteration in any respect, and was now formally presented for probate and allowance as her last will and testament. It had been contended by the counsel on behalf of the parties contesting its admission to probate as such, that the facts proved in the case, owing to the peculiarity of them, afford a strong, if not a conclusive presumption, that the deceased, not only intended to, but did in fact revoke the will in question, by the subsequent will so made and executed by her in 1857; whilst on the other side, it had been contended with equal earnestness and confidence, that the presumption is just the reverse of that, and in as much as the latter will cannot possibly be found, it was our duty to infer and presume that the deceased afterward intentionally destroyed it with the view and for the sole and direct purpose of reviving and restoring the former, the one before them, as her last will and testament. But in regard to that matter the court was bound to say that it is a settled rule of law that whenever a second or subse- quent will has been shown to have been executed and been traced to the possession of the deceased, and it cannot be found after his or her death, it is to be presumed that the maker has destroyed it with the intention of thus revoking it, and the jury should so consider it in the present case, unless there was countervailing proof before them to rebut that presumption ; for if there had been any proof before them of its destruction by accident, or by any other person without the consent or knowledge of the deceased, that would rebut it. Presuming then, as we are bound to do under the facts proved in the case, that the will of 1857 was afterward intentionally suppressed and destroyed by the deceased, the legal effect and necessary consequence of it

would be, without making any other, to leave the will of 1852 to stand as it originally stood before the making of any other, and to become her last will and testament on her death.